## GAHAGAN *v.* UNION MUTUAL INSURANCE COMPANY.

Upon an application by the plaintiff for insurance upon his dwelling-house, made
through a person who was in the habit of taking applications and forwarding them
to the company, a policy of insurance was made and signed, and, with the applica-
tion and premium note, neither of which were signed by the plaintiff, put into
the hands of one R, who delivered them all to the plaintiff, who kept them in his
possession, without signing the application or note, until after the loss by fire:—
*Held*, that, if the contract took effect at all, the application must be regarded as part
of it; and, as it represented the land to be unincumbered, when, in fact, there was a
mortgage upon it, the policy, in accordance with the provisions of the charter,
was void.

THE parties agreed to the following facts :
This is an action of assumpsit, to recover for loss and damage by
fire.   On the 12th day of May, 1858, a policy of insurance was
made at the office of said company of $350 on the plaintiff's dwell-
ing-house, and $50 on household furniture therein.
Before the policy was made, an application and blank note were
furnished to the company by James B. Marston ; and, after the
policy was made, the policy, application, and note, were delivered
by the secretary of the company to Marston ; and the secretary will
swear that he has no doubt that the instructions to Marston were
that the policy was to be delivered to the plaintiff, upon the sign-
ing of the application and the note, and the payment of the pre-
mium, although he has no recollection of the transaction, except
that such is his opinion from the papers.   Marston delivered the
policy, application, and note, to one Rolfe, and Rolfe delivered them
all to the plaintiff, within a few weeks after the policy was made.
Neither the application or note were ever signed or redelivered to
the company, nor was the premium ever paid.   The property was
destroyed by fire, December 9, 1859.
At the time the application and policy were made, a mortgage
existed upon the dwelling-house, from the plaintiff to one John N.
Speed, for $125, the existence of which was not known to the com-
pany until after the fire, being informed thereof by the plaintiff in
his notice of the loss.
After the fire and claim of loss by the plaintiff, when an assess-
ment was made by the company upon notes of the class in which
the plaintiff's policy belonged, the plaintiff was notified by mail of
an assessment of $2.40 on this policy, which has never been paid.
The plaintiff, in his statement of loss to the company after the
fire, claimed for furniture $25, upon which the directors passed the
following vote : " *Voted*, To allow A. Gahagan, as a gratuity for loss
on property described in application No. 6348, village class, the sum
of $25, free from assessment on amount of premium note, which
premium note should have been given to the company for $24, as
per said application."
Marston was in the habit of taking applications for insurance in
the company, and forwarding them to the company, upon which the
company were in the habit of issuing policies ; but he had no ap-
pointment as agent of the company.
Copies of the policy, application, and note, and the charter and

by-laws of the company, were a part of the case.   It was agreed
that, if the court should be of opinion that the plaintiff could re-
cover for the loss of the dwelling-house, judgment should be ren-
dered for the sum of $175 upon the house, and $25 upon the
personal property, deducting any orders that may have been ac-
cepted by the company; or the plaintiff might recover two thirds
of the value of the property, as found by a jury; otherwise, judg-
ment should be rendered for the defendants for costs.

*A. S. Marshall,* for the plaintiff.

*Fowler & Chandler,* with *George, Foster & Sanborn,* for the defendants.

BELLOWS, J.   By the charter of the defendant corporation, all
buildings, and the land upon which they stand, and the property
insured therein, shall be held as security for any deposit note
which is held for such insurance; and the policy itself shall create
a lien upon the same.   And it is provided that, if the assured have
an estate less than a fee-simple, unincumbered, in the property
insured, " or if the property or premises are incumbered, policies
shall be void, unless the true title of the assured and the incum-
brances on the same be expressed therein."   Sections 7 and 11 of
the act of incorporation.

Under these circumstances, the existence of an incumbrance is a
fact material, as a matter of law, to be disclosed; and, if not set
forth in the policy, it will be void, unless it be shown that the in-
cumbrance was known to the insurer, and not fraudulently concealed.

The case before us, provided the contract was completed, is
brought clearly within the principle of *Marshall* v. *Insurance Co.,*
27 N. H. 157, and that principle is confirmed by the case of *Patten*
v. *Insurance Co.,* 38 N. H. 338, and other cases cited by the defend-
ant's counsel.

The question then is, was any contract of insurance made or
perfected? and if so, what was it?   The case finds that the appli-
cation, premium note, and policy, the latter signed, and the others
not signed, were placed in the hands of the plaintiff a few weeks
after their date, and were retained by him, without signing the
application or note, or paying the premium, until after the loss of
the property by fire, December 9, 1859.   Whether as matter of law
there could be a delivery of the policy so as to take effect as such,
until the execution of the application and premium note, it is not,
with the views we entertain, necessary to inquire; because we are
of the opinion that the application and policy, with the charter and
by-laws, are but parts of an entire contract, and that the plaintiff
could not receive and hold the policy as binding upon the defend-
ant, without, at the same time, recognizing and giving effect to the
application and all its stipulations, as binding upon him.   The
policy expressly refers to the application for a description of the
property insured, and as forming a part of the policy; and, in
accordance with repeated decisions in this State, the application
must be regarded the same as if incorporated into the policy itself.

This is held in *Patten* v. *Insurance Co.*, and *Marshall* v. *Insurance Co.*, before cited.

It is true, it might be open to the plaintiff to show that, in this case, the application was not made a part of the policy; but to do so against the written stipulation in the policy, would probably require something more than parol testimony, and nothing of any kind in that direction is shown. We hold, then, that, if any contract of insurance was made, the application, upon the facts before us, must be regarded as part, and binding upon the plaintiff; and, therefore, as the incumbrance upon the property was not made known, the policy must be held void. If it were material to inquire whether the policy was, in fact, delivered without requiring the execution and delivery of the application and note, and it were competent in law to show it, there is nothing stated in the case from which the court could properly make an inference as to the fact of such delivery, but it would be a matter for the jury.

As such inquiry is not deemed necessary, and as the plaintiff is not entitled to recover for the loss of the dwelling-house, there must be, in accordance with the agreement of the parties,

*Judgment for the defendant.*